**OIL CITY NAT. BANK et al. v. UNITED STATES.**

No. 44623.

Court of Claims.

Oct. 5, 1942.

Helen Goodner, of Washington, D. C. (Geo. E. H. Goodner and D. F. Prince, both of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

The sole question in this case is what part of a dividend received by Harry Heasley in the year 1934 from the Devonian Oil Company is taxable and what part is not taxable.

During the years 1920 to 1934, inclusive, the Devonian Oil Company was engaged in the buying and selling of oil and gas leases and in the production and sale of crude oil. Between the years 1925 and 1934 it disposed of a great many of its capital assets. There were gains and losses in the sales of the various properties. The total operations showed a net gain for some years and a net loss for others.

The issue in this case grows out of a transaction during the year 1934, the taxes for that year being paid in the year 1935, with additional special assessments for 1934 paid in 1936 and 1937.

During the year 1934 the Company made 34 different sales of assets. Sales were made in every month of the year except June and August. Among the 34 transactions was the sale of the Alford, Ingram and Milstead leases, which will be referred to as the three leases. Total sales for the year amounted to $1,479,858.48. Of this amount $1,419,311.61 was received from the sale of the three leases. The profit from the sale of the three leases was $1,270,998.-57. Due to losses on some of the sales the profit from all the sales during 1934, including the sale of the three leases, was $1,249,749.49.

During 1934 the Company paid four regular quarterly dividends of 25 cents per share, thus making a distribution of $80,-451.25.

On April 1, 1934, the Company sold the three leases, receiving payment May 15, 1934. On June 11, 1934, it made distribution to its stockholders of $5.00 per share, or a total of $1,609,025.

On June 11, 1934, Harry Heasley owned 20,780 shares out of a total of 321,805 outstanding in the hands of stockholders. He received dividends thereon in the total amount of $124,505 during 1934.

In arriving at the amount of earnings available for dividend payments in each of the years 1920 to 1933, inclusive, the Commissioner of Internal Revenue averaged the Devonian Oil Company's total income from all sources for the year, treating the income as accruing ratably throughout the year. For the year 1934 he used the same method as to the four regular quarterly dividends, but applied a different method for determining the operating income for the profit from the sale of the three leases. The profits from the sale of these three leases he did not treat as having accrued ratably.

The plaintiffs contend that the profits from the sale of the major capital asset need not be prorated over the year as ordinary income, but as profits available for a special dividend distribution.

In the light of the peculiar facts of this case, we do not think that the Commissioner of Internal Revenue was justified in

departing from the method which he had used during the previous years. During the previous years as well as during the year 1934 there had been numerous sales of leases and other assets. Some of these showed gains, some of them showed losses. It was practically impossible to tell until the end of the year whether there would be a gain or a loss for the year. In treating this particular transaction separately and in arriving at his determination the Commissioner of Internal Revenue did not take into consideration overhead and other operating costs. He did not take into consideration either depreciation or depletion for the year 1934, though these had been taken into account in previous years.

True, this was a large transaction and undoubtedly showed a profit, but with all these factors present, we do not see how the Commissioner could know just what that profit would be until the end of the year when the various factors and the amount involved in such factors could be known and until the further losses and profits for the year had been ascertained. In the sale of numerous assets in the oil business it is always possible that profits will be almost if not completely absorbed by other losses during the operating year.

Practically the same question was considered by the Board of Tax Appeals in the case of Gardner Governor Co. v. Commissioner, 5 B.T.A. 70, except in that case the position of the parties was reversed, the Government contending for and securing a decision to the effect that the losses should be prorated through the year in order to determine whether there was a net gain or a loss. The Board in that case commented upon the endless confusion and disputes that would arise if an arbitrary method were to be used as to isolated transactions. In a memorandum opinion by the Board of Tax Appeals entered November 6, 1941, in Boylston Market Association C. C. H. (1941, par. 7769–B), it was held that a method used consistently over a period of years should be continued.

The Government having taken one position in the Gardner case, supra, and having prevailed, it does not seem just that it should now be permitted to take a directly opposite position and prevail again merely because it would mean more money in the individual case, especially in view of the confused consequences that would necessarily follow. We do not think the cases of Mason v. Routzahn, 275 U.S. 175, 48 S.Ct. 50, 72 L.Ed. 223 or Edwards v. Douglas, 269 U.S. 204, 46 S.Ct. 85, 70 L.Ed. 235, applicable to the facts of this case. Entirely different questions were presented in those cases.

In the instant case the special dividend distribution was considerably more than the profits from the sale of the three leases and considerably more than the total profits from the entire year. In the many sales that were being made involving both profits and losses, it was impossible to determine at the time of the special distribution or at the time of the sale of the property or at any period during the operating year just what the profits, if any, would be during that year. If a separate method is to be used in reference to a transaction simply because it is large, then there is no logical dividing line and there would be no sure method by which the taxpayer could know in advance into just what classification any individual item would fall. Numerous lawsuits and consequent uncertainty would inevitably result.

In the facts of this case the taxpayer was entitled to the usual method of prorating the profits over the year and to have the tax levied on the basis of the net earnings for the year in accordance with the method used by the Commissioner of Internal Revenue in calculating the tax of the same company for the previous several years.

Plaintiffs are entitled to recover the sum of $18,525.92, with interest thereon at the rate of 6 percent per annum from March 24, 1937.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting)

The question is whether a $1,239,166.-79 profit received on May 15, 1934, by Devonian Oil Company from the sale of three leases, and distributed to its stockholders in a special dividend on June 11, 1934, should be treated as having been earned by Devonian before, or after, June 11. The mere statement of the question would seem to answer it. It was in fact earned and received on May 15.

Plaintiff argues that we should treat the profit as if it had been received a little at a time throughout the entire year 1934, one

three hundred and sixty-fifths of it on each day. The effect of our indulging in this fiction would be to make more than half of this sum nontaxable to the stockholders, including plaintiff, who received the profit by way of a special dividend, since, upon our assumption, we would have to regard more than half of the distribution of this profit as a distribution of capital.

The statutes are plain. Dividends paid to a stockholder constitute income in his hands for income tax purposes, if they are paid out of earnings or profits of the corporation and not out of its capital. The Revenue Act of 1934, c. 277, Sec. 115, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 703, provides as follows: " (b) Source of Distributions. For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *" By this statute the Commissioner of Internal Revenue was, I think, required to treat this distribution on June 11 as having been made from the May 15 profit.

Plaintiff urges that because the Commissioner had, in other years, and in 1934, apportioned the Devonian Company's ordinary profits over its fiscal year in determining what proportion of its regular quarterly dividends came from income and not from capital, he must do the same with this special distribution of an extraordinary profit. The process of apportioning the earnings over the year is in the ordinary case a convenience to the corporation, the taxpayer-stockholder, and the Government. It saves the corporation the expense and trouble of making accountings at the several times in the year at which it pays its dividends, and permits it instead to have one accounting to show how its affairs stood for the entire year. It saves the Government the expense and trouble of checking and verifying four accounts per year instead of one. Hence the practice seems to have been put into effect by the Commissioner by common consent and in the interest of efficient administration.

The practice of apportionment would have served no purpose of convenience in the case before us. Both the profit and the distribution were so extraordinary, in comparison with the regular business of the Devonian Company, that a single look at the books shows where the money that was distributed came from, and when.

In Edwards v. Douglas, 269 U.S. 204, 46 S.Ct. 85, 70 L.Ed. 235, the Supreme Court of the United States approved the practice of apportionment, when there was no showing that the practice operated to the prejudice of the taxpayer. In Mason v. Routzahn, 275 U.S. 175, 48 S.Ct. 50, 72 L.Ed. 223, that Court refused to sanction apportionment when its effect was to impose the higher tax rates of a later year upon income that had in fact been earned before that year. I think we should not require the Commissioner to use apportionment when it is demonstrable that it deprives the Government of revenue due it under the plain terms of the statute. I would dismiss plaintiff's petition.